(No. 86-CC-0227– <span style="background:black">     </span>

BANKERS LEASING ASSOCIATION, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed November 26, 1990.*

JAY A. SCHILLER, for Claimant.

NEIL F. HARTIGAN, Attorney General (STEVEN SCHMALL, Assistant Attorney General, of counsel), for Respondent.

## OPINION

RAUCCI, J.

On December 15, 1981, the Claimant, Bankers Leasing Association, entered into an agreement with the Respondent, State of Illinois, to lease three Exxon typewriters to the State for a period of 60 months. The Claimant was to be paid by the State an amount of $452.23 on a monthly basis. Mr. Charles Kusar executed the agreement on behalf of the State of Illinois. These typewriters were leased for the purpose of use at the Illinois Industrial Commission.

Paragraph 2(d) of the lease executed by the parties provided:

"the parties understand that as long as lessee has sufficient appropriated funds to make the payments hereunder, it will keep this agreement in effect through all the renewal terms and make all payments or it will exercise it's [*sic*] option under Paragraph 13 to purchase the property. Lessee hereby covenants and agrees to use its best efforts to obtain sufficient appropriated funds in order that Lessee shall be able to make all payments required hereunder until the expiration of this agreement at the end of all renewal terms, or its earlier termination by exercise of Laces' option under Paragraph 13 to purchase the property. If Lessee does not have sufficient appropriated funds so that this agreement is not renewed for an available renewal term, the Lessee shall not, until the date on which the last renewal term would have ended, expend any funds for the purchase or use of property similar to the property subject to this agreement."

In other words, the State's participation in the continuation of this contract was contingent upon the Legislature appropriating sufficient funds to cover the contract.

By letters dated September 19, 1984, and November 29, 1984, Mr. Kusar terminated the contract between Claimant and the State. In 1986, the Claimant picked the typewriters up from Respondent and was unable to sell or lease them because the manufacturer had gone out of that particular business. As a result, the typewriters were donated to a local high school.

Mr. Kusar was the fiscal officer of the Industrial Commission when the contract was originally executed. Mr. Kusar admitted that while the above lease agreement was in effect, the State purchased from the Xerox Corporation, a high-speed copying machine and, as part of that purchase agreement, was given ten new typewriters for the typing work that had to be done at the Industrial Commission. The purchase price for the copying machine was $1,100.00 a month over a 60-month period.

The testimony established that the Legislature appropriated approximately four million dollars to the Industrial Commission for the fiscal year 1985. The Chairman of the Industrial Commission is mandated to

use the appropriations in a manner which produces the most benefit for the agency. In making the decision as to what is not beneficial for the agency, the Chairman has discretionary authority relating to programs and expenditures on behalf of the Industrial Commission. Prior to its introduction in the General Assembly, the Industrial Commission submitted a budget to the Bureau of the Budget by line-items of appropriations. The new Xerox copier was a line-item appropriation as were the monies necessary to fulfill the contract with the Claimant. When the budget was received back from the Bureau of the Budget, it had deleted the monies for the machines that are the subject of this dispute. Mr. Kusar's testimony was that the Legislature, since September 9, 1984, has not appropriated any new monies for word-processing equipment in the Industrial Commission. Further, the typewriters which were received from Xerox, are not used to type Industrial Commission decisions, the function of the Claimant's typewriters while they are with the State. Mr. Kusar testified that the State had equipment which they purchased in the late 1970's as word-processing equipment which continued to type the decisions of the Industrial Commission.

The State's decision to purchase the Xerox copier with the accompanying typewriters is now used to attempt to justify its failure to complete the contract with the Claimant. No one can say with certainty that if the budget sent to the Bureau of the Budget did not contain the line-item request for the Xerox equipment, the Bureau would not have deleted the monies for Claimant's contract. However, it is reasonable to draw that inference from the evidence presented. The State's contention that the new typewriters are not used for the same purposes as Claimant's equipment is difficult to believe.

While the record is not as clear as we would like it, we find that Claimant has met its burden of proof and is entitled to judgment.

It is therefore ordered, adjudged and decreed that the Claimant be awarded Twelve Thousand Six Hundred Sixty Two and 44/100ths ($12,662.44) Dollars, the amount owed on the lease to the Claimant.